**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**IVELISSE MARTÍNEZ-SUÁREZ,**

**Plaintiff,**

**v.**

**MANSIONES DE GARDEN HILLS
APARTMENTS, et al.,**

**Defendants.**

**CIVIL NO. 18-1686 (GAG)**

## OPINION AND ORDER

One week after Hurricane María made landfall in Puerto Rico, Ivelisse Martínez-Suárez ("Plaintiff" or "Martínez-Suárez") woke up early in the morning before sunrise to go get gasoline at a nearby station. When leaving the apartment building where she was staying, Martínez-Suárez slipped on the last step of a staircase and fell, suffering bodily injuries.

On September 18, 2018, Plaintiff brought this action, predicated upon the Court's diversity jurisdiction, 28 U.S.C. 1332, against Mansiones de Garden Hills Apartments ("Mansiones"). Plaintiff claims that, under the Commonwealth of Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141 ("Article 1802"), Mansiones is liable for her injuries because her fall was due to the allegedly negligent design of Mansiones' staircase. (Docket No. 1).

During discovery, Mansiones filed a third-party complaint against MQ Contractors, Nearq Studios, and their respective unidentified insurance companies. (Docket No. 24). The third-party complaint alleges that if plaintiff's liability allegation were proven, then that the two corporations hired by Mansiones to design, construct, and supervise the stairs' construction should also be held

Civil No. 18-1686 (GAG)

liable. Id. at 4. Notwithstanding, counter-claims against MQ Contractors have been stayed as a result of pending bankruptcy proceedings. (Docket No. 42).

Mansiones and Nearq Studios (collectively, "Defendants") jointly move for summary judgment arguing that Plaintiff's evidence is insufficient to establish her negligence claims under Article 1802. (Docket No 61). Namely, Defendants posit that Nearq Studios and Architect Nelson Rivera-Rodríguez ("Architect Rivera-Rodríguez") were not negligent in designing the stairs because both the design as well as the stairs complied with the applicable building codes effective at the time of the construction and since the steps, as designed, did not create a dangerous condition which could have caused Plaintiff's fall. (Docket No. 61 at 13). Further, Defendants posit that because Architect Rivera-Rodríguez complied with the design requirements as set by the applicable building codes, he did not breach his duty of care. Id. Absent a breach of their duty, Defendants argue they cannot be held liable for designing stairs with an inherently dangerous condition that would have required Mansiones to warn its residents or visitors. Id.

Defendants also posit that Martínez-Suárez pleads a premises liability claim based on negligent design, which did not encompass a claim for damages based on negligent "construction." Id. Notwithstanding, Defendants argue that the record evidence supports the conclusion that the actual construction of the stairs followed the applicable building codes. Id. at 14. Finally, Mansiones and Nearq Studio put forward that, besides the absence of a defective design, Plaintiff has failed to provide evidence to prove that the accident and her injuries were foreseeable. Id. at 15. Defendants argue that the steps were designed and constructed in an anti-slip material, that no other prior accident had occurred in those steps, and that the circumstantial evidence surrounding the accident after the passing of Hurricane María, no electricity in the area, and before sunrise, "can hardly be deemed foreseeable." Id. at 16. Consequently, Defendants petition the Court to enter judgment in

Civil No. 18-1686 (GAG)

their favor because the record is devoid of evidence to support Plaintiff's claims from which a reasonable jury could find breach of duty or proximate cause. Id.

In opposition, Plaintiff argues that the evidence of record supports her claim that the stairs constitute a "clear and present danger" to residents and visitors because the stairs do not coincide with Architect Rivera-Rodríguez's design plan and blueprints nor comply with the applicable building codes. (Docket No, 74 at 10). As such, she posits that Architect Rivera-Rodríguez, as the condominium's representative, was negligent in failing to supervise the construction. Id. Moreover, Martínez-Suárez advances that Architect Rivera-Rodríguez was aware that the Municipality of Guaynabo ("Municipality") was carrying out remodeling work on the sidewalk in front of Mansiones. Id. at 12. As such, Plaintiff argues Architect Rivera-Rodríguez should have made sure that the Municipality did not alter the staircase under the general standard of the "prudent and reasonable person." Id. Moreover, Plaintiff avers that Mansiones' administration breached its duty by omission of not warning visitors about the stairs' dangerous condition. Id. According to Plaintiff's expert testimony, the dangerous condition was that the last step, which neither matched the design plan's specifications nor complied with the applicable codes, was the proximate cause of her fall. Id. at 13. Martínez-Suárez advances that this condition can be corrected and has been known for years yet continues to exist, "provok[ing] a problem for the public." Id. Consequently, Plaintiff concludes that she has established the elements for negligence and proximate cause; hence, she has a viable tort case that warrants submission to a jury for adjudication. Id. at 14.

Defendants replied arguing that Plaintiff improperly attempts to extend the scope of her claims including ones not asserted in her Complaint. (Docket No. 83). Specifically, they advance that Plaintiff now impermissibly posits: (1) claims based on negligent construction; (2) claims based on negligent supervision of the construction project, and (3) claims against Architect Rivera-

Civil No. 18-1686 (GAG)

Rodríguez and Nearq Studios for his involvement as the designer of the project. (Docket No. 83 at 1-2). Moreover, Defendants argue that Plaintiff lacks evidence to support that the step adjacent to the sidewalk constituted a "clear and present danger" or that Mansiones had actual or constructive knowledge of any potentially dangerous condition on or around its premises. Id. at 2. In addition, Defendants emphasize that the sidewalk adjacent to Mansiones is under the exclusive control of the Municipality of Guaynabo pursuant to Puerto Rico law and, as such, Mansiones had no control over the sidewalk's remodeling. Id. at 3. Finally, Defendants argue that the occurrence project was an isolated incident, accompanied by the fact that the fall occurred one-week after Hurricane María. Id. at 4. This belies the existence of a "potentially dangerous condition" and that the same was not known or even foreseeable to Mansiones. Id. Plaintiff sur-replied. (Docket No. 88).[1]

After carefully reviewing the parties' submissions, applicable law, record evidence, the Court **GRANTS** Defendants' Joint Motion for Summary Judgment at Docket No. 61.

## I.   Defendants' Opposition to Plaintiff's Response and Counter Statement of Facts

Defendants proposed seventy uncontested facts to establish that summary judgment should be granted in their favor. (Docket No. 62). Plaintiff admitted forty-two of these facts and denied, qualified, or objected to the rest while further proposing a statement of twenty-four additional facts. (Docket No. 72). Defendants address Plaintiff's denials, qualifications, and objections and replies to the additional facts. (Docket No. 84).

### A.   Local Rule 56

Although, the primary purpose of Local Rule 56(b), L. Cv. R. 56(b), "is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is

---

[1] Defendants move to strike Plaintiff's sur-reply at Docket No. 8 because "it was filed without seeking leave from this Court." The Court agrees and said request is hereby **GRANTED**. See L. Cv. R. 7(d) (D.P.R. 2020).

Civil No. 18-1686 (GAG)

genuinely in dispute," <u>CMI Capital Mkt. Inv., LLC v. González-Toro</u>, 520 F.3d 58, 62 (1st Cir. 2008), a Court "must responsibly review the record, especially the evidence upon which the statement of uncontested facts is based on, to adequately evaluate a motion for summary judgment." <u>Reyes Caballero v. Oriental Bank</u>, Civil No. 16-2952 (GAG), 2019 WL 6330812 at *2 (D.P.R. 2019); <u>see also</u> <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 150 (2000) (Under Rule 56, "the court should review the record as a whole.").

Local Rule 56(c) instructs that "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." L. Cv. R. 56(c) (D.P.R. 2020). This opposing statement "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." <u>Id.</u> Each denial and qualification must be supported by a record citation. <u>Id.</u> If a party improperly controverts the facts, Local Rule 56 allows the Court to treat the non-movants party's facts as uncontroverted. <u>Natal Pérez v. Oriental Bank & Tr.</u>, 291 F. Supp. 3d 215, 218 (D.P.R. 2018). The United States Court of Appeals for the First Circuit has consistently held that litigants ignore Local Rule 56 at their peril. <u>See</u> <u>Cabán Hernández v. Philip Morris USA, Inc.</u>, 486 F.3d 1, 7 (1st Cir. 2007). The Court explained in <u>Natal Pérez</u> that:

> The line between a properly supported qualification or denial and additional facts can be blurry. Because Local Rule 56 requires that a record citation support each qualification or denial, it can seem inevitable to proffer additional facts when doing so. But a better understanding of what constitutes a qualification or denial helps. A qualification is "[a] modification or limitation of terms or language; esp., a restriction of terms that would otherwise be interpreted broadly." *Qualification*, BLACK'S LAW DICTIONARY 1436 (10th ed 2014). Simply put, a qualification must clarify a statement of fact that, without clarification, could lead the Court to an incorrect inference. Thus, if a fact states that "Plaintiff works as an attorney all day," a proper qualification would be: "Plaintiff works as an attorney from 9-5" and a citation to the record supporting this fact. This would prevent the Court from inferring that Plaintiff works as an attorney from 7 a.m. to 9 p.m., which can be the standard in the legal world. Adding that Plaintiff works from 9-5 would not be considered an "additional fact" in the context of Local Rule 56. On the other hand, a denial, as common sense

Civil No. 18-1686 (GAG)

suggests, is "[a] statement that something is not true." *Denial*, <u>Id.</u> at 527. So if a fact
states that "Plaintiff is an attorney," a proper denial would be: "Denied. Plaintiff is a
doctor" and a citation to the record supporting this fact.

<u>Natal Pérez</u>, 291 F. Supp. 3d at 219. When evaluating a proper qualification or denial and additional

facts, the Court must decide whether "a party's denial or qualification of a proposed fact [is] strictly

limited to the issue therein raised." <u>Acevedo-Padilla v. Novartis Ex Lax, Inc.</u>, 740 F. Supp. 2d 293,

298 (D.P.R. 2010), <u>rev'd and remanded on other grounds</u>, 696 F.3d 128 (1st Cir. 2012). The "strictly

limited to the issue therein raised" standard "is demanding but necessary" because "[h]onest

argumentation and clear presentation of the issues and facts help the Court tremendously[;] [t]he

opposite burdens the Court just as much." <u>Natal Pérez</u>, 291 F. Supp. 3d at 220.

Bearing this in mind, the Court finds that Plaintiff failed to properly contest several of

Defendants' proposed facts, while Defendants properly contested most of Plaintiff's additional

statement of facts. As pointed out by Defendants, many of Plaintiff's facts are unsupported by record

evidence or have been presented in a conclusory manner. (Docket No. 84 at 1-2; 85). Consequently,

the following proposed facts have been deemed as unopposed and are thus, deemed admitted: 21,

22, 23, 30, 34, 51, 53, 55, 61, 62, and 66. (Docket No. 62). Similarly, the Court will not consider the

following additional proposed facts submitted by Plaintiff: 10, 11, 14, 15, 16. (Docket No. 73).

The Court will address these Local Rule 56 issues throughout the factual background and

discussion. In spite of Plaintiff's non-compliance with Local Rule 56(b), the Court is bound to

display a chronological timeline that "construe[s] the evidence in the light most flattering to the

nonmovant[] and indulge[s] all reasonable inferences in [her] favor." <u>Iverson v. City of Boston</u>, 452

F.3d 94, 98 (1st Cir. 2006).

## II.   <u>Relevant Factual Background</u>[2]

---

[2] The Court notes that Defendant Mansiones de Garden Hills Apartments is described in the Complaint and the Third-
Party Complaint as "a private residence complex," "with standing to sue and/or be sued." (Docket Nos. 1 at 1; 23 at 2).

Civil No. 18-1686 (GAG)

On or about September 6, 2017, Martínez-Suárez visited a friend for the first time at her residence in the Mansiones Condominium. (Docket Nos. 62 ¶ 3; 72 ¶ 3). Martínez-Suárez was staying as a guest at her friend's apartment at the Mansiones Condominium when Hurricane María struck Puerto Rico on September 20, 2017, and she was aware that all of Puerto Rico, including the Mansiones Condominium, was left without electricity. (Docket Nos. 62 ¶ 5; 72 ¶ 5). On September 27, 2017, Martínez-Suárez woke up at 5:00 AM. (Docket Nos. 62 ¶ 6; 72 ¶ 6). Due to the ongoing state of emergency in the hurricane's aftermath, customers had to wait in line for hours at gasoline stations.[3] (Docket Nos. 62 ¶ 6; 72 ¶ 6). Plaintiff planned on getting gasoline and decided to walk because the line for the nearest gasoline station began in front of the Mansiones Condominium. (Docket Nos. 62 ¶ 9; 72 ¶ 9). Plaintiff departed to the gasoline station before sunrise. (Docket Nos. 62 ¶ 7; 72 ¶ 7). In her deposition testimony, she described the weather conditions; specifically, she stated that the sky was "gray, it's not light but it also was not dark, gray. It [was] like dusky."[4] (Docket No. 72-1 at 8). That morning, the Mansiones Condominium did not have any exterior lighting because the building was still without power. (Docket Nos. 62 ¶ 10; 72 ¶ 10). The building's generator was for limited use. Id.

According to Martínez-Suárez's sworn statement, while going down the stairs, she "lost her rhythm because the last [step] was not the same as the others and that it was shorter. After losing

---

[3] In the pending motions before the Court, the parties refer to Mansiones as an urbanization, as a residential complex or as condominium. As discussed later on, the record is devoid of proof regarding the legal nature of Defendant Mansiones, which prevents the Court from resolving legal issues. For purposes of this Opinion, the Court will reference Defendant as "Mansiones" and the building in which the fall occurred as the "Mansiones Condominium."

[3] The Court takes judicial notice, pursuant to FED. R. EVID. 201, that, in weeks following Hurricane María, people had to make long lines to purchase gasoline. See Camilar Domonske, *At A Gas Station With No Gas, Puerto Ricans Settle In For An Interminable Wait*, NPR (September 26, 2017) available at https://www.npr.org/sections/thetwo-way/2017/09/26/553632771/at-a-gas-station-with-no-gas-puerto-ricans-settle-in-for-an-interminable-wait.

[4] Defendants advanced that it was "dark" outside, yet Plaintiffs denies said fact explaining it was "gray" and "dusty," not "dark." After reviewing the record, the fact is supported by the record and admitted as qualified. See L. CV. R. 56(e) (D.P.R. 2020). The Court directly cites from Plaintiff's deposition testimony.

[her] balance, [she] twisted her ankle and fell." (Docket No. 72-8). Plaintiff described that she used the handrails when she descended the staircase. (Docket Nos. 62 ¶ 11; 72 ¶ 11). During her deposition, Martínez-Suárez prepared a drawing to explain her fall. (Docket Nos. 62 ¶ 13; 72 ¶ 13). According to the same, she fell from the last step onto the sidewalk, which was adjacent to the building's exterior, and landed on the sidewalk near the handicap ramp. (Docket Nos. 62 ¶¶ 13-14; 72 ¶¶ 13-14). Plaintiff claims having suffered multiple and permanent bodily injuries as a result of her fall. (Docket Nos. 62 ¶ 15; 72 ¶ 15).

Rita Hernández is a resident of the Mansiones Condominium and former president of its resident association. (Docket Nos. 62 ¶ 59; 72-3 at 1). She was president of the association in 2012 when work was done on the building's exterior staircases. (Docket No. 62 ¶ 60). According to Hernández's testimony, the only accident reported on the building's exterior staircases after the completion of the 2012 work was that of Martínez-Suárez on September 27, 2017. (Docket Nos. 62 ¶¶ 61-62).

Plaintiff objects to the relevancy of the previous proposed facts. (Docket No. 72 at 9). Defendants counter and argue said fact is relevant because the "lack of evidence as to prior accidents is probative of a lack of actual or constructive knowledge" of an alleged dangerous condition. (Docket No. 84 at 11). This is correct. Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc., 951 F. Supp. 1028, 1039 (D.P.R. 1996), aff'd, 124 F.3d 47 (1st Cir. 1997) ("[A]s a general matter, whether or not an incident of the same type as the one causing the injury had occurred before will be significantly probative of that type of event's foreseeability."). These proposed facts are admitted and deemed as uncontested for purposes of summary judgment. See L. Cv. R. 56(e) (D.P.R. 2020).

A. Design and Construction

Architect Rivera-Rodríguez, founder and partner of Nearq Studios, formerly Nelson Rivera Arquitectos, designed the exterior staircase in the Mansiones Condominum in late 2012, which is

Civil No. 18-1686 (GAG)

now the subject of the present case. (Docket No. 62 ¶ 64; 62-3 at 16). Architect Rivera-Rodríguez has been a licensed architect since 1992 with experience in designing projects of all sizes and has worked with multiple building codes, such as design building construction and technical specifications.[5] (Docket Nos. 62 ¶¶ 21-23).

During his deposition testimony, Architect Rivera-Rodríguez described his role in the design, supervision, and project execution of the Mansiones Condominum exterior staircases. (Docket No. 62-3). Architect Rivera-Rodríguez explained that he designed the work performed in the staircase.[6] (Docket Nos. 62 ¶ 24; 72 ¶ 24). Using the design plan, he showed the plan's final project and depicted the previously existing staircase with diagonal lines. (Docket Nos. 62 ¶¶ 25-26; 72 ¶¶ 25-26). Architect Rivera-Rodríguez further testified that the existing stairs from before the 2012 work complied with the local building code that expired in 2000. (Docket Nos. 62 ¶ 27; 72 ¶ 27). When describing the design plan, he testified that the existing stairs had proportions of six (6) inches on the riser and twelve (12) inches on the step and that the new building code required that the proportions be seven (7) inches on the riser and eleven (11) inches on the step. (Docket Nos. 62 ¶ 28; 72 ¶ 28). The material chosen for the staircase project was a prefab concrete step, which included the rider and the step as one single piece to avoid inaccuracies in construction and provide an anti-slip surface. (Docket No. 62 ¶ 30).

---

[5] Plaintiff objects to the relevancy of these proposed facts. (Docket No. 72 at 9). Defendants argue that these facts are relevant and "based on the sworn testimony of Rivera and Plaintiff offered no evidence from the record to refute or contest the matters stated therein as they relate to his education, training and experience." (Docket No. 84 at 3-4). The Court agrees with Defendants as to the facts' relevance. See Burke Rozzetti v. Ford Motor Co., 439 F. Supp. 3d 13, 18-19 (D.P.R. 2020) (citing Mitchell v. United States, 141 F.3d 8, 9 (1st Cir. 1998). These proposed facts are admitted and deemed as uncontested for purposes of summary judgment. See L. Cv. R. 56(e) (D.P.R. 2020).

[6] Defendants contest the use of the words "resurface" and "remodel" throughout their opposition because, according to their expert witness, the staircase's structure was "altered" or "changed" which entails more than "remodeling" or "resurfacing." The Court is aware of said contested fact and while construing the evidence in the light most favorable to plaintiff, Anderson, 477 U.S. at 255, neither term shall be used in the opinion's factual background sections.

Civil No. 18-1686 (GAG)

Plaintiff denies the previous proposed fact with a generic paragraph based on her expert's testimony and opinion as to whether the stairs were built according to the applicable building code or standard and Architect Rivera-Rodríguez's design plan. (Docket No. 72 ¶ 30). This generic denial is not supported by record evidence that effectively contests this fact. Thus, the proposed fact stands as proffered. See L. Cv. R. 56(e) (D.P.R. 2020). The Court further notes that Martínez-Suárez's expert agreed that the entire surface of the stairs was covered in a homogenous material as shown in the drawing. (Docket No. 62-7 at 21).

Architect Rivera-Rodríguez advanced that the design plan contained the new configuration changes as to the staircase, which complied with the new building code. (Docket Nos. 62 ¶ 29). Plaintiff properly contests the fact that the stairs complied with the applicable building codes based on her proposed expert's testimony. (Docket No. 72 at 4). This issue of fact shall be entertained subsequently.

When describing the design plan, Architect Rivera-Rodríguez explained that he prepared the same before September of 2012. (Docket Nos. 62 ¶ 32; 72 ¶ 32). As part of this endeavor, he was provided with the blueprint of the original stairs, which he used to become acquainted with the structure's existing conditions in order to then prepare an "as-built" blueprint corroborating the real dimensions or measurements of the existing steps. (Docket Nos. 62 ¶ 33; 72 ¶ 33). The design plan did not contemplate the demolition of the original steps, but rather entailed the placement of new steps on top of the existing ones. (Docket No. 62 ¶ 34). To accomplish this, Architect Rivera-Rodríguez clarified that the existing steps had to be leveled and that the surface of the top step had to be partly demolished.[7] Id.

---

[7] Defendants deny this fact as to whether the "small demolition" had the effect of "altering" the original stairs. This is more of a qualification than a denial because Defendants do not cite evidence record that disputes Architect Rivera-Rodríguez's deposition testimony. The proposed fact stands as proffered. See L. Cv. R. 56(e) (D.P.R. 2020).

Civil No. 18-1686 (GAG)

The staircase project took place from September 1, 2012 through mid-October 2012. (Docket Nos. 62 ¶ 37; 72 ¶ 37). MQ Contractors, who Architect Rivera-Rodríguez neither hired nor gave input as to its hiring, performed the construction work for the project. (Docket Nos. 62 ¶¶ 35-36; 72 ¶¶ 35-36). However, as the project's designer, Architect Rivera-Rodríguez would visit the construction site around once or twice a week to ensure that the project was being built according to the blueprint and to solve situations that might not be under consideration in the construction documents. (Docket Nos. 62 ¶ 38; 72 ¶ 38).

Upon completion of the project, Architect Rivera-Rodríguez advances that the project complied with the design as depicted in the construction blueprints and the applicable building codes as well as that the riser on the last step adjacent to the sidewalk was seven (7) inches. (Docket Nos. 62 ¶ 40). Plaintiff properly contests the fact that the stairs complied with the applicable building codes and the design plan based on her expert's testimony. (Docket No. 72 at 4). Architect Rivera-Rodríguez also explained that the design did not encompass the remodeling of the sidewalk adjacent to the last step riser. (Docket Nos. 62 ¶ 42; 72 ¶ 42).

B. Sidewalk Remodeling

When the staircase's work was underway, the Municipality was carrying out remodeling work on the sidewalks in front of the Mansiones Condominum and throughout the residential complex. (Docket Nos. 62 ¶ 44; 72 ¶ 44). In 2012, before the Municipality's remodeling work, the sidewalk adjacent to the Mansiones Condominum was raised by a nearby tree and cracked by its roots. (Docket Nos. 62 ¶ 54; 72 ¶ 54). When the Mansiones Condominum staircase project concluded, the Municipality's remodeling work had not reached the condominium because it had started working from the center of the neighborhood and progressed outwards toward the Mansiones Condominium. (Docket Nos. 62 ¶ 44; 72 ¶ 44).

Civil No. 18-1686 (GAG)

After the completion of the project in mid-October 2012, according to his deposition testimony, Architect Rivera-Rodríguez did not have any further involvement with the project until the filing of this lawsuit. (Docket Nos. 62 ¶ 53).[8] The day before his deposition, on February 11, 2012, he visited the Mansiones Condominum and observed a completely smooth sidewalk without any cracks, but saw that the last step contiguous to the sidewalk was less than seven (7) inches. (Docket Nos. 62 ¶¶ 46; 54; 72 ¶¶ 46; 54). He observed that all the steps had the same height, except for the last step, which was half of the height that it had been at the time that the project was completed. (Docket Nos. 62 ¶ 47; 72 ¶ 47). Based on his thirty-four (34) years of experience, Architect Rivera-Rodríguez stated that the concrete of the sidewalk was attached to the step, which indicated that the sidewalk was built after the step. (Docket Nos. 62 ¶ 48; 72 ¶ 48). He also explained that although he was not present during its construction, the sidewalk was either raised or built on top of the existing sidewalk. (Docket Nos. 62 ¶ 52; 72 ¶ 52).

Architect Rivera-Rodríguez testified that he was never consulted by the Mansiones Condominium, the Municipality, or any private contractor regarding the remodeling of the sidewalk. (Docket Nos. 62 ¶ 53). He understood that his design of the staircase was not going to be impacted by the Municipality's remodeling because he had observed the work done on the other streets, which entailed demolishing the existing sidewalks to put new ones.[9] (Docket Nos. 62 ¶ 51). Moreover, as

---

[8] Plaintiff denies this fact arguing that Architect Rivera-Rodríguez knew the architect in charge of the remodeling and that the remodeling was going to occur. (Docket No. 72 ¶ 53). Notwithstanding, this assertion does not dispute the proposed fact and, as such, it is deemed as uncontested. See L. Cv. R. 56(e) (D.P.R. 2020).

[9] Plaintiff denies this fact advancing that Architect Rivera-Rodríguez testified as to what could have possibly led to the last step's riser reduction. (Docket No. 72 at 7-8). Nonetheless, this assertion does not dispute the proposed fact and, as such, it is deemed as uncontested. See L. Cv. R. 56(e) (D.P.R. 2020).

Civil No. 18-1686 (GAG)

the designer, he believed that he did not have the right to prevent the Municipality from doing work on the sidewalks since they were under its custody.[10] (Docket Nos. 62 ¶ 55).

Finally, also during his deposition, Architect Rivera-Rodríguez indicated that cast stone material used for the staircase could be cut and that if the cement were to be drilled, then the remaining three and a half (3 1/2) inches of cast stone would be seen. (Docket Nos. 62 ¶ 50; 72 ¶ 50). Following his deposition, on March 23, 2021, he conducted a site inspection alongside Plaintiff's counsel and Defendants' expert witness. (Docket Nos. 62 ¶ 56; 72 ¶ 56). Personnel from the Condominium drilled part of the sidewalk adjacent to the last step designed by Architect Rivera-Rodríguez. This was visually confirmed via measurement that the cement from the remodeled sidewalk covered approximately three and one-half inches of the cast stone step. (Docket Nos. 62 ¶ 57; 72 ¶ 57). Photographs of the drilling and measurements are part of the record. (Docket No. 62-5).

### III.   Standard of Review

It is well-settled that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See Fed. R. Civ. P. 56(a). A "genuine" issue is one that could be resolved in favor of either party, and a "material" fact is one that has the potential of affecting the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); see also Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017). The moving party bears the initial burden of demonstrating the lack of evidence to support the

---

[10] Plaintiff denies this fact averring that, according to her expert's deposition testimony, "sidewalk was built inside the premises of the property." (Docket No. 72 at 8). The proposed fact is undisputed and deemed as uncontested. See L. Cv. R. 56(e) (D.P.R. 2020).

Civil No. 18-1686 (GAG)

nonmoving party's case. <u>Celotex</u>, 477 U.S. at 325. The movant party also "must aver an absence of evidence to support the nonmoving party's case." <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994). If not, then the burden "shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." <u>Maldonado-Denis</u>, 23 F.3d at 581. The non-movant party may establish that a fact is genuinely in dispute by citing evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all justifiable and reasonable inferences. <u>Id.</u> at 255. <u>See also</u> <u>McGrath</u> v. <u>Tavares</u>, 757 F.3d 20, 25 (1st Cir. 2014) (citing <u>Alicea</u> v. <u>Machete Music</u>, 744 F.3d 773, 778 (1st Cir. 2014)). At this stage, the Court does not make credibility determinations or weigh the evidence. <u>Anderson</u>, 477 U.S. at 255. Moreover, summary judgment may be inappropriate if the parties "merely rest upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Rossy v. Roche Prod., Inc.</u>, 880 F.2d 621, 624 (1st Cir. 1989).

## IV.   <u>Legal Analysis and Discussion</u>

As a threshold matter, the Court finds it necessary to clarify and untangle Plaintiff's legal theory. On its face, the Court reads plaintiff's claims as premise liability under both negligent design and negligent maintenance modalities. (Docket No. 1).

According to the Complaint, Plaintiff's liability theory encompasses that the "stairs were negligently designed and unsafe from their very conception. The uneven step height caused plaintiff

Civil No. 18-1686 (GAG)

to fall." (Docket No. 1 at 3). This is boilerplate language used by the First Circuit in <u>Vázquez-Filippetti</u> to define a "negligent design" claim. Mansiones relied only on this specific language to file its Third-Party Complaint against Nearq Studios and MQ Contractors to have them respond for damages if liability is found against them. (Docket No. 24). Accordingly, Nearq Studio, as third-party defendant, can *only* be held liable under the form of negligent design in Plaintiff's premise liability claim.

Martínez Suárez also alleges in the Complaint that Mansiones "did not exercise a reasonable degree of care and caution for the safety of its visitors so as to avoid its visitors, including plaintiff, from suffering injuries or damages" and that "the stairs were negligently designed and created a dangerous environment and unsafe condition." (Docket No. 1 at 3). Plaintiff's additional theory of liability is that if "effective signs of the danger that alerted visitors . . . of the dangerous condition" were placed, then her fall could have been avoided. <u>Id</u>. The language of this allegation mirrors the language that has been used by the Puerto Rico Supreme Court to explain a negligent maintenance or failure to warn premise liability claim.

Martínez-Suárez appears to combine the legal standards of the two modalities. In the Complaint, it seems as if she made one claim *contingent* upon the other. In other words, only if Plaintiff is able to establish that Defendants were negligent in the stairs' design can Mansiones be held liable for failing to warn residents and visitors of this alleged dangerous condition—the negligent design. This misconstruction of liability theory can be further attested in the parties' dispositive motions currently before the Court. On the one hand, Defendants' joint motion for summary judgment relies on negligent maintenance jurisprudence, yet they add and discuss negligent design caselaw in their summary judgment reply. (Docket Nos. 61 at 11-12; 83 at 5-6). On

**Civil No. 18-1686 (GAG)**

the other hand, Plaintiff's opposition to summary judgment is solely based on negligent maintenance jurisprudence. (Docket No. 74 at 7-9). The Court reminds the parties that:

> "It is not enough merely to mention a possible argument in the most skeletal way, *leaving the court to do counsel's work*, create the ossature for the argument, and put flesh on its bones. . . . Judges are not expected to be *mindreaders*. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (citations and internal quotation marks omitted). Notwithstanding, while viewing the case in the light most favorable to the non-moving party and given her the benefit of all reasonable inferences, the Court considers both premise liability modalities separately while bearing in mind Plaintiff's "combined" liability theory.

### A.   Puerto Rico's General Tort Statute: Guiding Principles

In this diversity case, Puerto Rico substantive law applies. See Rodríguez-Tirado v. Speedy Bail Bonds, 891 F.3d 38, 41 (1st Cir. 2018); Montalvo v. González-Amparo, 587 F.3d 43, 46 (1st Cir. 2009). Article 1802 of the Puerto Rico Civil Code imposes tort liability on "[a] person who by an act or omission causes damage to another through fault or negligence." P.R. LAWS ANN. tit. 31, § 5141. To establish liability for negligence, Martínez-Suárez must demonstrate that Mansiones and Nearq Studios owed her a duty, that they breached said duty (i.e., defendants were negligent), that she suffered damages, and that those damages were caused by the breach of duty (i.e., causation). Nieves-Romero v. United States, 715 F.3d 375, 378-79 (1st Cir. 2013) (citing Soc. Gananciales c/p Hernández-López v. González Padín Co., Inc., 17 P.R. Offic. Trans. 111, 125, 117 P.R. Dec. 94 (P.R. 1986)).

Defendants' duty "is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." Id. (citing Ortiz v. Levitt & Sons of P.R., Inc., 1 P.R. Offic. Trans. 407, P.R. Dec. 290 (P.R. 1973)). "Foreseeability is a component of the breach

**Civil No. 18-1686 (GAG)**

[element] because a defendant only breaches [its] duty if [it] acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." Id. (internal quotation marks omitted). Hence, Martínez-Suárez must show the foreseeable risks created by the Defendants' acts or omissions to satisfy her burden as to this element. Id. After Plaintiff has demonstrated a breach of duty, she must next establish that the Mansiones' and Nearq Studios' negligence "actually caused her injuries and the defendant[s] could have reasonably foreseen that the injuries would result from his acts or omissions." Márquez v. Casa de España de Puerto Rico, 59 F. Supp. 3d 409, 414 (D.P.R. 2014); see also Jiménez v. Pelegrina, 12 P.R. Offic. Trans. 881, 885, 112 P.R. Dec. 700 (P.R. 1982).

"[I]n a negligence action, foreseeability provides the linchpin both for determining the duty of an actor and for determining [its] liability for the breach of that duty." González Cabán v. JR Seafood, 2019 WL 1399315, at *4 (D.P.R. Mar. 25, 2019) (quoting Malavé-Félix v. Volvo Car Corp., 946 F.2d 967, 971-72 (1st Cir. 1991)). "A person can act negligently (i.e. fail to act reasonably to prevent foreseeable harm) and yet escape liability if his negligent act fortuitously does not cause injury to another." Id. Moreover, "[t]he norm of foreseeability is that the risk that must be foreseen must be based on probabilities and not on mere possibilities." Id. at *5 (citations and internal quotation marks omitted). See also Jiménez, 12 P.R. Offic. Trans. at 885.

"As is true in most jurisdictions, foreseeability is a central issue in these cases, as it is an element of both breach of duty and proximate cause." Vázquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007); see also Jiménez, 12 P.R. Offic. Trans. at 888. For purposes of Article 1802, there is a causal relationship between an omission and an injury when the injury was reasonably foreseeable and could have been avoided had the defendant performed the omitted act. Woods-Leber, 951 F. Supp. at 1036; see also Gananciales c/p Hernández-López, 17 P.R. Offic. Trans. at 128.

Civil No. 18-1686 (GAG)

    B. <u>Premises Liability</u>

    Puerto Rico law recognizes two distinct types of breaches in premises liability cases: negligent design and negligent maintenance. <u>Cedeño Nieves v. Aerostar Airport Holdings LLC</u>, 251 F. Supp. 3d 360, 367 (D.P.R. 2017); <u>see also</u> <u>Cotto v. Consol. Mut. Ins. Co.</u>, 16 P.R. Offic. Trans. 786, 793, 116 P.R. Dec. 644 (P.R. 1985). In a negligent design case, a breach of the duty "arises from defendant[s'] failure to create a safe environment in the first instance. In <u>Cedeño Nieves</u>, the Court explained that "defendant[s'] property had flaws such as excessively steep stairs or a balcony with no guardrail." <u>Id.</u> The alleged danger in a negligent design case rather than arising from a lack of upkeep—arises from the *intended* design." <u>Id.</u> (emphasis added). In a negligent maintenance case, by contrast, "breach of the duty of care arises from defendant[s'] lack of upkeep on the premises. For instance, defendant failed to mop up a spill or replace burned-out lightbulbs." <u>Id.</u>

    In the seminal case of <u>Vázquez-Filippetti</u>, the United States Court of Appeals for the First Circuit explained that "[n]egligent design cases involve a claim that the property was unsafe from its *very conception*: the risks to patrons stem from the layout of or the nature of improvements on the property." <u>Vázquez-Filippetti</u>, 504 F.3d at 50. (emphasis added). The First Circuit held that:

> In such cases, the property encountered by the plaintiff existed in the state intended by its owner; *it was not in disrepair or altered by some external force or action*. Therefore, the alleged defect, or negligence, is *inherent* in the property's design, and the jury must evaluate the defendant[s'] actions with some understanding of what would, or would not, constitute a reasonably safe design. In most design cases, a plaintiff will only meet her burden of proof if she presents evidence as to the applicable standard of care, because the jury must be sufficiently familiar with that standard to evaluate whether the defendant[s'] design complied with it.

<u>Id.</u> at 50-51 (emphasis added); <u>see also</u> <u>Aponte Bermúdez v. Berrios</u>, Civil No. 15-1034 (CVR), 2018 WL 10435084 (D.P.R. Mar. 15, 2018), <u>aff'd sub nom.</u> <u>Aponte-Bermúdez v. Colón</u>, 944 F.3d 963 (1st Cir. 2019), <u>cert. denied,</u> 141 S. Ct. 360 (2020) (summarizing legal standard for evaluating premise liability cases based on negligent design).

Civil No. 18-1686 (GAG)

On the other hand, the First Circuit explained that under Puerto Rico law, a negligent maintenance case is one based on "allegedly dangerous conditions on commercial property . . . [which] require a showing that the defendant knew of or should have foreseen the risks created by the condition." Vázquez-Filippetti, 504 F.3d 43 at 50. In these cases, "the general rule is that although a business owner is not the absolute insurer of the safety of its patrons, the business owner has a duty to keep said establishment in a safe condition so that the clients do not suffer harm or damage." Torres v. KMart Corp., 233 F. Supp. 2d 273, 278 (D.P.R. 2002) (citing Cotto, 16 P.R. Offic. Trans. at 786). Notwithstanding, "liability is only imposed in situations that involve risky conditions inside the business premises that the owner knew or should have known existed." Id.

### i.    Negligent Design: Standard of Care

At the summary judgment stage, the moving parties, Mansiones and Nearq Studios, bear the initial burden of demonstrating lack of evidence to support the nonmoving party's case, Celotex, 477 U.S. at 325. Once the moving parties have accomplished this feat, the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

In a design defect case, "where the design is beyond the common experience or knowledge of an average lay person, the *plaintiff must present evidence*, usually through an *expert witness*, as to the relevant standard of care for the design and the way(s) in which the defendant[s'] design fell below that standard." Vázquez-Filippetti, 504 F.3d at 54 (emphasis added). This is premised on the fact that the jury "must be sufficiently familiar with that standard" to evaluate if the defendants' design complied with it. Id. at 51.

The Court now turns to the duty of care and the parties' respective proposed expert witnesses.

Civil No. 18-1686 (GAG)

### a. *Engineer Otto R. González-Blanco*

Otto R. González-Blanco is a licensed engineer, who describes himself as a "structural-hydraulic-traffic accident reconstructionist forensic expert." (Docket Nos. 72-6). He was designated as an expert by Plaintiff, rendered his report on March 12, 2019, and was deposed on January 12, 2021. (Docket Nos. 62-7; 72-6).

According to Engineer González-Blanco's report, he visited the accident site on January 17, 2019 at 8:30 a.m. accompanied by Plaintiff's attorneys. (Docket No. 72-6 at 1). He made a second visit on March 11, 2019 to verify additional building code requirements. Id. Aside from measuring each of the staircase's step, riser, and runs, Engineer González-Blanco reviewed the "as-built data" and drawing designs by Nearq Studio. Id. The report indicates that the condominium's construction drawings were not available for revision. Id. The report includes a table that details the measurements of steps, runs, and risers and are numbered from the sidewalk up to the walkway landing. Id. Referencing this table, Engineer González-Blanco explains that:

> The first run exceeds the run length as per building code regulations for various years. The fall occurred on this last run-to-sidewalk. Although the riser complies with the minimum measurements, stairs should have equal risers and runs. Codes establish[] that the stair treads shall be of uniform size and shape, except the largest tread run within any flight of stairs shall not exceed the smallest by more than 3/8". Also, the greatest riser height within any flight of stair shall not exceed the smallest by more than 3/8".

(Docket No. 72-6 at 1). To make the previous assessment, Engineer González-Blanco claims having revised six (6) different building codes: (1) "Building Regulation, Planning Regulation no. 7, amended 1968, Table III – D – 2.2; page 94-95. Prior Construction"; (2) "UBC-85, section 3306.c; page 563"; (3) UBC-97, section 1003.3.; page 1-109"; (4) "International Existing Building Code – 2003"; (5) "Codes of federal Regulations 28 CFR Part 36, Revised as of July of July 1, 1994. ADA Standards for Accessible Design; section 4.9.2", and (6) "American National Standard, Accessible

Civil No. 18-1686 (GAG)

and Usable Buildings and Facilities, International Code Council, 1995. Section 504." (Docket Nos. 72-6 at 2). Out of these six codes, the expert report only contains direct, *ad verbatim*, citations from (5) "ADA Standards for Accessible Design: section 4.9.2" and (6) "American National Standard, Accessible and Usable Buildings and Facilities, International Code Council, 1995. Section 504." (Docket Nos. 72-6 at 2). Both these direct references explain the uniformity requirement that in a flight of stairs all steps shall have "uniform riser heights and uniform tread widths." Id.

Engineer González-Blanco included in his expert report a section on his findings where he concludes that: (1) the measurements do not comply with Code Standard, treads width have different measures, and the accident occurred in the last tread which exceeds 11" inches by 9 3/4" inches and the last riser is smaller than all other risers by 2 7/8" to the left and 2 7/8 " to the right; (2) the minimum riser versus greatest riser exceeds the 3/8" code tolerance; (3) the railings were not properly constructed as designed; (4) design measurements of risers and treads do not comply with code standards; (5) the stairs were not constructed according to the measurements indicated by designers, and; (6) the drawings are not certified by neither the Municipality's permit office nor a licensed architect. (Docket Nos. 72-6 at 4).

During his deposition,[11] Engineer González-Blanco opined that the stairs were not "remodeled," but rather "changed" because the elements of the stairs were "altered" since the original staircase had nine steps but the one designed by Architect Rivera-Rodríguez had one less step. (Docket No. 62-7 at 10). He explained that the stairs' measurements do not coincide with the drawing because "the steps [were] slanted inward and . . . built on a vertical riser" in the drawing. (Docket No. 62-7 at 45). Furthermore, he proffered that in the drawing, the steps "ha[d] a

---

[11] These excerpts of Engineer González-Blanco's deposition testimony were included as part of Plaintiff's statement of additional facts, (Docket No. 73), and were also discussed in her response to Defendants' statement of facts. (Docket No. 72 at 4).

protuberance that goes to the limit of the boundaries of the building[,] [b]ut the steps were built to the limits of the wall of the building that is inside of the boundary wall." Id. Engineer González-Blanco further opined that "the stairs could cause a fall because [they] do[] not comply with the last step [which] can be corrected," and the stairs "continue[d] to be a condition that can provoke a problem for the public." (Docket No. 62-7 at 75).

Defendants contest Engineer González-Blanco's expert opinion by relying on Architect Rivera-Rodríguez's deposition testimony. (Docket No. 85 at 2, 3, 10). Defendants draw attention to other aspects of Engineer González-Blanco's testimony, such as the fact that he agreed with the proposition that the riser of the steps was designed to be seven (7) inches in height and that the entire surface of the stairs was covered in a homogenous material as shown in the drawing. (Docket Nos. 62 ¶ 64; 72 ¶ 64). Engineer González-Blanco also testified that he had no knowledge of the staircase's condition or the adjacent sidewalk in 2012. (Docket No. 62 ¶ 66).[12] When asked whether he had reviewed the design plans prepared by Architect Rivera-Rodríguez and if the design plans were defective, Engineer González-Blanco answered: *"No, the design [was] not defective. It does not have any defects."* (Docket No. 62-7 at 43) (emphasis added).

### b. *Architect Jorge R. Calderón-López*[13]

Jorge R. Calderón-López is a licensed architect in Puerto Rico with over 18 years of experience and provides "construction & consulting forensic services." (Docket No. 72-7). He was retained by Nearq Studios "to evaluate NEARQ's riser design of the West stair -in the Mansiones Condominium] to determine[] whether said design was defective and/or presented an unsafe

---

[12] Plaintiff denies this fact advancing that Engineer González-Blanco testified that the original stairs complied with the code." (Docket No. 72 at 9-10). Notwithstanding, this assertion does not dispute the proposed fact and, as such, it is deemed as uncontested. See L. Cv. R. 56(e) (D.P.R. 2020).

[13] The Court notes that Defendants did not submit and barely relied on their own expert's report and testimony. However, given Plaintiff submitted it for the record, the Court will consider it for purposes of this Opinion.

Civil No. 18-1686 (GAG)

condition according to the applicable code." Id. at 5. The report is dated September 27, 2019 and discloses having reviewed and analyzed in preparing his report the following to prepare his report: (1) the Complaint, third party complaint, and answers in the above-captioned case; (2) stair plans made by Nearq Studio; (3) the site visit; (4) plaintiff's export report; (5) photographs of where the accident occurred; (6) MQ Contractors Construction quote, and (7) the International Building Code. Id. at 2-3.

Before presenting his analysis, Architect Calderón-López explains that "every local architect and engineer must design in accordance with [the design codes]" and that the Uniform Building Code ("UBC") "was the standard to follow in the design and construction of structures in Puerto Rico until the International Building Code ("IBC") became effective locally in March 2011." Id. at 5. Subsequently, he lists his findings: (1) the area of the staircase was composed of concrete and monolithic cast-stone steps; (2) while walking along the edge of the sidewalk and stairs, the general areas are noticeably in good condition, specifically that none of the cast-stone steps were broken and both handrails were securely fastened to the side walls; (3) that Nearq Studios' design of the stairs, which had specified steps from a monolithic cast-stone non-slippery surface and equal measurements, was implemented in the constructions except for the first step; (4) the first step, when coming up, was not built by MQ Contractors according to the design plans inasmuch as its height was less than 7"; (5) the stairs bottom riser abuts or joins a sloping sidewalk, which affects the height of the first riser in its entire width in at least 1/2" difference; and (6) due to the difference in surfaces between the cast-stone and the sidewalk it is distinctive where the stairs ends and begins. (Docket No. 72-7 at 6-7).

In his report, Architect Calderón-López concludes that after reviewing Nearq Studios' design, "it was clear that the riser height was correctly designed and according to code." Id. at 7.

Then, he directly cites *ad verbatim* the following applicable IBC sections: (1) Section 1011.5.2 "Riser Height and Tread Depth"; (2) Section 1011.5.4 Dimensional Uniformity (including the sub-section with Exceptions), and (3) Section 1011.5.4.1 Nonuniform Height Risers. Notably, Architect Calderón-López highlighted that the 3/8" dimensional uniformity requirement had an exception for nonuniform riser dimensions. Id. at 7-8. The exception found in Section 1011.5.4.1 of the IBC states that "where the bottom or top riser adjoins a sloping pubic way, walkway or driveway having an established grade and serving as a landing, the bottom or top riser is permitted to be reduced along the slope to less than 4 inches (102 mm) in height[.]" Id. at 8. In light of this exception, Architect Calderón-López concluded that the same applied to the staircase designed by Nearq Studios because the bottom riser's measurement of less than 7" is "an established fact found by Plaintiff's expert and [himself]." Id. at 9. The Section 1011.5.4.1 exception also requires a "distinctive marking strip" with "slip-resistant surface," which are also "easily noticeable" in the Mansiones Condominium stairs because "of the difference in surface between the cast-stone steps and the concrete sidewalk." Id. When rendering his final opinion, Architect Calderón-López concluded as follows:

> [It] is my opinion that the nonuniform height between the bottom riser, were the plaintiff allegedly feel, and the other stair risers does not constitute a design defect. Furthermore, the nonuniform height between the risers is a common condition acknowledge by the International Building Code as an exception to the standard uniformity in riser height. Finally, the distinctive surface between cast-stone and concrete serves a marking to alert users of the nonuniform landing slope.

(Docket No. 72-7 at 9).

### ii.    *Rule 702: Expert Testimony*

Federal Rule of Evidence 702 governs the admission of expert testimony. Rule 702 requires the expert testimony to be (1) "based on sufficient facts or data" and (2) "the product of reliable principles and methods" as well as (3) that the witness apply "the principles and methods reliably" to the particular facts of the case. FED R. EVID. 702.

Civil No. 18-1686 (GAG)

When assessing Rule 702, "[t]he judge, as a gatekeeper, must ensure an expert's testimony is *relevant, sufficient* and is based on a *reliable* foundation." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); U.S. v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002). It is the Court's duty to ensure the Daubert standard is met before allowing any expert testimony." Rivera v. Centro Médico Del Turabo, Inc., Civil No. 15-1538 (GAG), 2017 WL 4122607, at *7 (D.P.R. Sept. 18, 2017). "[T]here is no particular procedure that the trial court is required to follow in executing its gatekeeping function under Daubert." United States v. Díaz, 300 F.3d 66, 73 (1st Cir. 2002). However, the gatekeeper function must be performed. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 158-59 (1999) (Scalia, J., concurring). The First Circuit has held that a trial court "need not make explicit findings on the admissibility criteria *sua sponte*." Smith v. Jenkins, 732 F.3d 51, 64 (1st Cir. 2013) (quoting Hoult v. Hoult, 57 F.3d 1, 5 (1st Cir. 1995)). However, the trial court must at least "carefully and meticulously" discuss the record when reviewing the proffered evidence. Id. (citing Goebel v. Denver & Río Grande W. R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000)).

The Court notes that no party in this case is requesting that the expert reports be stricken from the record. However, as gatekeeper, the Court must ensure that the experts' opinions comply with Rule 702 and the Daubert standard before permitting its admission.

The Court turns to the congruity of the data used by the proposed experts. The requisite review for reliability includes "consideration of several factors: the verifiability of the expert's theory or technique, the error rate inherent therein, whether the theory or technique has been published and/or subjected to peer review, and its level of acceptance within the scientific community." Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 80-81 (1st Cir. 1998) (citations omitted). In addition, the proposed expert must be "relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed

Civil No. 18-1686 (GAG)

opinion, if admitted, *likely would assist the trier of fact to understand or determine a fact in issue*[.]" Id. at 81 (citations omitted) (emphasis added). Although Daubert and its progeny require "trial judges to evaluate the level of support provided by complex scientific studies and experiments in myriad disciplines, reliability and relevance *remain* legal judgments." Id. (emphasis added).

In the end, "[f]ailure to provide a testimony or a report detailing the *basis* for the expert's opinion in a *comprehensive scientific manner* can cause the expert witness and his report to be eliminated from trial." Clemente-Vizcarrondo v. United States, Civil No. 17-1144 (RAM), 2020 WL 748840, at *2 (D.P.R. Feb. 14, 2020) (citing Arenas & Romey, Professional Judgment Standard and Losing Games for Psychology, Experts and the Courts, 68 REV. JUR. UPR 159, 180 (1999)) (emphasis added).

Regarding the applicable duty of care, Plaintiff's evidentiary submissions and legal arguments are, to say the least, "defective." Engineer González-Blanco's expert report lacks the basic information concerning his expert renderings, such as: what building or standard codes he relied on as the ones applicable to the design and/or construction of the stairs at the Mansiones Condominium. (Docket No. 72-6). According to Engineer González-Blanco's report, he revised six (6) different standards or building codes in making his assessment. Id. at 2. However, he never *explicitly* states what code or codes were applicable or current during the period in which the stairs were design and then constructed.

Inevitably, this leaves the Court, as gatekeeper, to ponder: Were all of the cited codes current at the time of accident? Why did he choose these six codes or standards? Were there codes left out? How did he determine which ones apply? What was his methodology? Simply put, Engineer González-Blanco's report creates more questions than it answers.

26

Civil No. 18-1686 (GAG)

Of the six (6) codes mentioned in the report, Engineer González-Blanco only cites two (2) of them when describing the uniformity requirement "uniform riser heights and uniform tread widths" for any flight of stairs. The findings, lack any reference or correlation to which specific codes' section, if any, were used in his assessment which then led him to conclude that the Mansiones Condominum's stairs failed to comply with Architect Rivera-Rodríguez's design plan or blueprints. Engineer González-Blanco merely states that "[m]easurements do not comply with Code Standards," "[d]esign measurements of risers and treads do not comply Code Standards" or "[d]rawings are not certified by the Municipality of Guaynabo Permit Office, nor licensed Architect." (Docket No. 72-6). With this information lacking, the Court cannot properly determine whether the expert's conclusion was made "in a scientifically sound and methodologically reliable fashion." Ruiz-Troche, 161 F.3d 77, 85 (1st Cir. 1998); Milward v. Acuity Specialty Products Group, Inc., 639 F.3d 11, 15 (1st Cir. 2011).

Furthermore, in her opposition to summary judgment, Martínez-Suárez also fails to include in her arguments, or cite to, any standard or building code applicable to the stairs' design and/or construction. In fact, she does not rely on any of the six (6) codes referenced in Engineer González-Blanco's report and how the Defendants' design fell below the standard.

If the Court cannot distinctly identify the relevant standard of care owed from Plaintiff's proposed expert opinion, a jury will not be able to do so either. Thus, it would likely *not* assist the trier of fact to understand or determine a fact in issue See Vázquez-Filippetti, 504 F.3d at 54. Expert testimony is necessary in this action "because the design of buildings often involves experience or knowledge that the average lay person does not possess." Claybaugh v. Condado Plaza Hotel and

Casino, Civil No. 08-1667 (MEL), 2010 WL 2998853, at *5 (D.P.R. July 26, 2010) (citing Vázquez-Filippetti, 504 F.3d at 50-53)).[14]

Notwithstanding the above-mentioned deficiencies of Plaintiff's expert report, the Court is mindful that it should not exclude the same "without affording the proponent of the evidence adequate opportunity to defend its admissibility." See Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 188 (1st Cir. 1997). Without ruling on its admissibility *sua sponte*, Hoult, 57 F.3d at 5, the Court holds that Engineer González-Blanco's expert report lacks supporting probative evidence, i.e. the applicable building code, "tied to the facts of the case in a way that aids the jury in carrying out its fact-finding functions." Rivera, 2017 WL 4122607, at *3; Daubert, 509 U.S. at 591 (expert testimony which does not "fit" the facts of the case is "not helpful"); see also Anderson, 477 U.S. at 252 (explaining that plaintiff must provide "evidence sufficient for 'a fair-minded jury [to] return a verdict' in [its] favor").

Now, giving Plaintiff the benefit of all reasonable inferences, as required at the summary judgement stage, Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998), the Court examines the record to determine the relevant standard applicable here.

In Aponte-Bermúdez, the Court entered judgment as a matter of law after trial because "[n]o building code, law or regulation applicable to the location and construction . . . at issue, in place at the moment of the accident, was presented by the expert witnesses." Aponte Bermúdez, 2018 WL 10435084, at *3. It reasoned that "the jury [would be] unable to evaluate the [property] and compare

---

[14] In Aponte-Bermúdez, the First Circuit reiterated that "[w]hat is 'ordinarily'" true is not invariably true: some negligence in design may be blatant enough not to require expert testimony just as an ordinary negligence case might occasionally call for more than lay testimony." Aponte-Bermúdez, 944 F.3d at 964. However, as in that case, no such exception is claimed nor applies in this case because both parties relied on expert testimony to support their legal arguments. Id.

Civil No. 18-1686 (GAG)

it with what would, or would not, constitute a reasonably safe design." Id. Although Martínez-Suárez fails to identify the applicable standard of care, Defendants *effectively* did this job for her.

Architect Calderón-López, issued a report distinctively focused on the uniformity and non-uniformity requirements for stairs set by IBC. (Docket No. 72-7). The report identified and explained the applicable code at the relevant time. Daubert, 509 U.S. at 597. As a result, the Court, based on the sections from the IBC identified by Defendants' expert, shall entertain the remaining elements of Plaintiff's negligent design claim. The relevant sections are:

1011.5.2 Riser Height and Tread Depth

Stair riser heights shall be 7 inches (178 mm) maximum and 4 inches (102 mm) minimum. The riser height shall be measured vertically between the nosings of adjacent treads. Rectangular tread depths shall be 11 inches (279 mm) minimum measured horizontally between the vertical planes of the foremost projection of adjacent treads and at a right angle to the tread's nosing. Winder treads shall have a minimum tread depth of 11 inches (279 mm) between the vertical planes of the foremost projection of adjacent treads at the intersections with the walkline and a minimum tread depth of 10 inches (254 mm) within the clear width of the stair.

1011.5.4 Dimensional Uniformity

Stair treads and risers shall be of uniform size and shape. The tolerance between the largest and smallest riser height or between the largest and smallest tread depth shall not exceed 3/8 inch (9.5 mm) in any flight of stairs. The greatest winder tread depth at the walkline within any flight of stairs shall not exceed the smallest by more than 3/8 inch (9.5 mm).

Exceptions:
1. Stairways connecting stepped aisles to cross aisles or concourses shall be permitted to comply with the dimensional nonuniformity in Section 1029.13.2.
2. Consistently shaped winders, complying with Section 1011.5, differing from rectangular treads in the same flight of stairs.
3. Nonuniform riser dimension complying with Section 1011.5.4.1.

1011.5.4.1 Nonuniform Height Risers

Where the bottom or top riser adjoins a sloping public way, walkway or driveway having an established grade and serving as a landing, the bottom or top riser is permitted to be reduced along the slope to less than 4 inches (102 mm) in height, with the variation in height of the bottom or top riser not to exceed one unit vertical in 12 units horizontal (8-percent slope) of stair width. The nosings or leading edges of treads at such nonuniform height risers shall have a distinctive marking stripe,

Civil No. 18-1686 (GAG)

different from any other nosing marking provided on the stair flight. The distinctive marking stripe shall be visible in descent of the stair and shall have a slip-resistant surface. Marking stripes shall have a width of not less than 1 inch (25 mm) but not more than 2 inches (51 mm).

(Docket No. 72-7 at 7-8).

Having established the applicable standard of care, the Court now analyzes whether Mansiones and Nearq Studio failed to follow these building code requirements. The design plan and blueprint, submitted to the record, (Docket No. 86-4), supports the conclusion that the stairs' *design* was in fact in compliance with the IBC or, in the alternative, were not defectively designed because the stairs were not "unsafe from its very conception." Vázquez-Filippetti, 504 F.3d at 50. Even though Plaintiff's expert report states that the measurements from the "as-built" stairs do not coincide with the design, during his deposition, Engineer González-Blanco was asked: "[A]fter having reviewed the plans prepared by architect Rivera, just the plans, not as constructed . . . strictly to the plans, is it your testimony that the design was defective?" (Docket No. 62-7 at 42). To which, he answered: *"No, the design is not defective. It doesn't have any defects."* Id. at 43 (emphasis added). Defendants' expert also concluded in his report that: "From the review of NEARQ's design of the West stair it was clear that the riser height was correctly designed and according to code." (Docket No. 72-7 at 7).

Notwithstanding the above, Martínez Suárez further argues that Defendants' negligence also extends to the defective *construction* of the stairs, which failed to comply with Architect Rivera-Rodríguez's design plans. Mansiones and Nearq Studios advance that this argument contradicts the Complaint, which does not encompass claims as to negligence in the "construction" of the stairs and was never amended to include such a claim.

Civil No. 18-1686 (GAG)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

                              *iii.*      *Defect in Construction*

        Although the Court agrees with Defendants that the Complaint does not use the phrase "defect in construction," Puerto Rico law, as interpreted by the First Circuit, mandates the Court to also scrutinize the "construction" itself in relation to the alleged negligently designed property. In Vázquez-Filippetti, the First Circuit explained that in negligent design cases, a trial court must consider whether "the property *encountered* by the plaintiff existed in the state intended by its owner" and was "*not* in disrepair or *altered by some external force or action*." Vázquez-Filippetti, 504 F.3d at 50 (emphasis added). The Court interprets this precedent as requiring, at least, a comparison between the design, the as-built stairs, and the applicable building code. As to this matter, the parties have raised contested issues of fact based on their experts' testimonies.

        Engineer González-Blanco opines that the stairs were not constructed according to the measurements indicated by the design and do not comply with the uniformity requirement set out by several building codes. (Docket Nos. 72-6 at 4). He concludes in his report that "the last tread . . . exceeds 11" by 9 3/4" and the last riser is smaller than all other risers by 2 7/8" to the last and 2 7/8" to the right." Id. Architect Calderón-López also acknowledges that the last riser is smaller than all other ones yet sustains that Section 1011.5.4.1 (Nonuniform Height Risers) of the IBC allows for this non-uniformity. Id. Defendants' expert did not address Plaintiff's expert finding that the last tread or run also does not comply with Architect Rivera-Rodríguez's intended design.

        The Court concludes that these alleged divergent issues of fact are neither "genuine" nor "material" to the disposition of this action. See United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (explaining that material issues of fact is that which has the potential "to change the outcome of the case under the governing law if the dispute over it is resolved favorably to [Martínez-Suárez]").

First, even if it is deemed as uncontested that the last tread or run was not constructed as designed, Martínez-Suárez claims that what caused her fall was "the uneven step *heights*." (DocketNo. 1 at 3) (emphasis added). As such, according to Plaintiff's liability theory, it is *immaterial* whether the last step's *run* did not match the design plans because she claims having fell due to the step's *height*, not width. Second, it is also an uncontested fact that the reduction in height (or riser) in the stairs' last step was the *result* of the Municipality's sidewalk remodeling.[15] (Docket Nos. 62 ¶¶ 46-48, 47, 52, 54; 72 ¶¶ 46-48, 47, 52, 54). Even if the stairs were not in the same state as designed by Defendants, it was "altered by some external force or action"—the Municipality's remodeling—thus, the alleged negligence in design was not *inherent* to the property. Vázquez-Filippetti, 504 F.3d at 50. Third, regardless of whether the change in height was due to the Municipality's remodeling, Architect Calderón-López explains that the same was allowed under the IBC.[16] (Docket No. 72-7 at 9).

Even if these "diverging" expert testimonies exist, the applicable duty of care relied by the Court in *arguendo*, i.e. the IBC, does not distinctively lay out that Mansiones and Nearq Studio had a specific duty to *supervise* the construction or to stop the Municipality from carrying out the remodeling. Aside from the general rule of a "prudent and reasonable person," Plaintiff has not invoked any applicable code, law, or regulation that establishes any such duty. For instance, Martínez-Suárez claims, supported by Engineer González-Blanco's deposition testimony, that the sidewalk was "inside" the premise of the condominium and, as such, Mansiones has control over it.

---

[15] The Court notes that the Municipality is not party to this case.

[16] Engineer González-Blanco advanced during his deposition that the non-uniformity exception does not apply to this case. (Docket No. 62-7 at 81-83). Given the lack of probative evidence in his report, the Court cannot consider this post-report expert testimony, pursuant to FED. R. CIV. P. 26(a)(2). See MMG Ins. Co. v. Samsung Elecs. Am., Inc., 293 F.R.D. 58, 61 (D.N.H. 2013) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony, or the function of expert reports would be completely undermined.") (internal quotations marks committed); see also Rivera-Marrero v. Presbyterian Community Hosp., 255 F. Supp. 3d 290, 296 (D.P.R. 2017).

Civil No. 18-1686 (GAG)

(Docket No. 62-7 at 45-46). Yet, the record is devoid of evidence as to whether the sidewalk in question is public or private, which has legal implications as to whom may be responsible for them. See Watchtower Bible Tract Socy. of New York, Inc. v. Municipality of Ponce, 197 F. Supp. 3d 340, 360 (D.P.R. 2016) (affirming that in Watchtower v. Municipality of Dorado, "the Puerto Rico Supreme Court answered in the affirmative this Court's certified question of law, holding that "the current law [in Puerto Rico] contemplates the existence of private residential streets.") (citations omitted). Finally, it is also uncontested that MQ Contractors carried out the *construction*, but all claims against it have been *stayed* due to a pending bankruptcy proceeding. (Docket No. 42). Hence, any potential liability claims against MQ Contractors for negligence in construction is currently stayed.

Consequently, these non-material issues of fact or allegedly diverging expert opinions, do not preclude the Court from entering summary judgment against Plaintiff who failed to distinctively demonstrate a duty or standard of care and how Defendants effectively breached the same.

### iv.    Negligent Design: Casual Nexus and Foreseeability

Additionally, Martínez-Suárez claims would also fail because she did not submit evidence establishing a sufficient *causal nexus* between her injury and Defendants' purported act or omission, Vázquez-Filippetti, 504 F.3d at 49. There is no evidence supporting her assertion that her accident was reasonably foreseeable. See Quiñones Sepulveda v. United States, 329 F. Supp. 2d 260, 265 (D.P.R. 2004) (explaining that the "lack of tortious conduct . . . undercuts the entire basis for [a] plaintiff's theory of negligent causation.")

The third element of negligence under Article 1802 of the Puerto Rico Civil Code is proximate cause. To establish said element, Martínez-Suárez must demonstrate "a sufficient causal nexus between the injury and defendant's act or omission." Vázquez-Filippetti, 504 F.3d at 49.

Civil No. 18-1686 (GAG)

Puerto Rico law makes the foreseeability of a plaintiff's injury central to the proximate cause inquiry, since it dictates that "no one shall be liable for events which could not be foreseen, or which having been foreseen were inevitable" unless otherwise provided by law. P. R. LAWS ANN. tit. 31, § 3022.

In Woods-Leber, the Court held that foreseeability could not be established through the *simple* fact that an accident occurred but rather that the "[t]he norm of foreseeability is that the risk that must be foreseen must be based on probabilities and not on mere possibilities." Woods-Leber., 951 F. Supp. at 1036 (internal quotations marks omitted). Based on this principle, "the primary method for such proof would be prior similar incidents, but that some other sort of evidence tending to show that the incident was foreseeable would also have been acceptable." Aponte Bermúdez, 2018 WL 10435084 at *5 (citing Woods-Leber, 951 F. Supp. at 1039). In the absence of any such proof, "the mere fact that the accident occurred, by itself, could not serve as evidence that it was foreseeable." Id.

It is uncontested that Plaintiff failed to provide any evidence of any prior, similar accidents in these stairs that "would have made this particular incident foreseeable and would have enabled Defendants to take remedial measures in order to avoid it." Aponte Bermúdez, 2018 WL 10435084 at *5. Conversely, Defendants submitted to the record the testimony of Rita Hernández, who stated that after the completion of 2012 project, the only accident that has occurred on these steps adjacent to the sidewalk was that of Plaintiff. (Docket Nos. 62 ¶¶ 59-62).

Finally, the circumstances surrounding the fall, which are not attributable to Mansiones or Nearq Studios, serve as "intervening causes" that broke the chain of causation. See Ríos Colón v. United States, 928 F. Supp. 2d 376, 386 (D.P.R. 2012). It is also uncontested that it "was gray" or "dusky" outside because the sun had not risen and that the Mansiones Condominum had no outside lighting because the building was still without electricity as a result of the hurricane. As such, no

Civil No. 18-1686 (GAG)

1   duty of care was violated by failing to foresee Plaintiff's accident under the circumstances. "This

2   lack of tortious conduct therefore undercuts the entire basis for plaintiff's theory of negligent

3   causation." Quinoñes Sepulveda, 329 F. Supp. 2d at 265 (citing Woods-Leber, 124 F.3d at 51).

4       To sum up, besides failing to establish an adequate standard of care as a result of a

5   "defective" expert opinion, the record contains *no significantly* probative evidence on the issue of

6   causation. González Cabán, 2019 WL 1399315 at *6. The record is devoid of evidence to support

7   Plaintiff's allegation that her fall was caused by Defendants' negligence. "Without such an

8   evidentiary predicate, the jury has no legally acceptable basis for finding Defendants liable for

9   Plaintiff[']s damages." Id.

10              *v.    Negligent Maintenance*

11      The Court reads Plaintiff's Complaint as alleging a premise liability theory that combines,

12  or confuses, the modalities of negligent maintenance and negligent design. Notwithstanding, the

13  Court notes that it cannot address Plaintiff's negligent maintenance claim because the record is also

14  devoid of evidence that defines the scope of Mansiones' legal personality. Defendant is only

15  described in the Complaint and the Third Party Complaint as "a private residence complex" "with

16  standing to sue and/or be sued." (Docket Nos. 1 at 1; 23 at 2; 72-3 at 1). This has substantial legal

17  consequences under Puerto Rico Property Law and thus, raises the following questions: What is

18  Mansiones' corporate structure? Is it a corporation or a limited liability company? What Puerto Rico

19  law governs its residence board or association? Is it governed by the Condominium Law, formally

20  known as the Horizontal Property Act, P. R. LAWS ANN. tit. 31, §§ 1291 *et seq.*? Without said crucial

21  information, the Court cannot analyze what duty was owed and, hence, possibly breached in

22  allegedly failing to maintain the staircase. Further, this limits any legal discussion as to whether

23

24

Civil No. 18-1686 (GAG)

Mansiones can be considered a "commercial property" or "business" for purposes of a negligent maintenance case and the extent of any potential liability. See KMart Corp., 233 F. Supp. 2d at 278.

Consequently, without this factual background as to Mansiones' legal capacity, the Court cannot consider Plaintiff's negligent maintenance claim. See Zannino, 895 F.2d at 17. Even assuming *arguendo* that the Court could consider the same, Plaintiff would also fail to meet the burden for her negligent maintenance claim under her *contingent* liability theory because she did not meet the burden for her negligent design claim.

**VI. Conclusion**

For the foregoing reasons, after carefully reviewing the parties' submissions, applicable law, record evidence, notably expert opinions and deposition testimonies, and without any genuine and material issue of fact, Defendants' joint motion for summary judgment at Docket No. 61 is hereby **GRANTED**. The claims against Defendant Mansiones de Garden Hills Apartments and Third-Party Defendant Nearq Studios are **DISMISSED**. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico this 24th of August, 2021.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge